# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 20-1591V
UNPUBLISHED

|  |  |
|---|---|
| GERALDINE MAVIN, | Chief Special Master Corcoran |
| Petitioner, | Filed: December 9, 2024 |
| v. |  |
| SECRETARY OF HEALTH AND HUMAN SERVICES, |  |
| Respondent. |  |

*Bridget C. McCullough, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Nina Ren, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On November 16, 2020, Geraldine Mavin filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a Table Injury – a Shoulder Injury Related to Vaccine Administration ("SIRVA") – as a result of an influenza ("flu") vaccine received on October 12, 2018. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Although Respondent conceded entitlement, the parties could not agree on damages, so the disputed issues were submitted to SPU Motions Day.

For the reasons described below, and after holding a brief hearing in this matter, I find that Petitioner is entitled to **$175,000.00** for actual pain and suffering.

---

[1] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.    Procedural Overview

As noted above, the case was filed on November 16, 2020. On February 14, 2022, Respondent filed a Rule 4(c) Report in which he conceded that Petitioner was entitled to compensation in this case. (ECF No. 23). Accordingly, on February 24, 2022, a ruling on entitlement issued in Petitioner's favor. (ECF No. 24).

The parties were subsequently unable to informally resolve the issue of damages, so a briefing schedule was set. (ECF No. 33). Petitioner filed her brief on November 10, 2022, requesting that I award her $185,000.00 in damages for past pain and suffering. (ECF No. 35). Conversely, in a response brief filed on May 9, 2023, Respondent argued that Petitioner should be awarded $120,000.00 for past pain and suffering. (ECF No. 39).

On October 24, 2024, I informed the parties that this case was appropriate for an expedited hearing and ruling via my "Motions Day" practice, at which time I would decide the disputed damages issues based on all evidence filed to date plus whatever oral argument they wanted to make. (ECF No. 45). The parties agreed, and an expedited hearing took place on November 22, 2024. Minute Entry dated November 22, 2024.[3] I orally ruled on Petitioner's damages at that time, and this Decision memorializes my determination.

## II.    Pain and Suffering

### A.  Legal Standard and Prior SIRVA Pain and Suffering Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Winkle v. Sec'y Health & Hum. Servs.*, No. 20-0485V, 2022 WL 221643, at *2-4 (Fed. Cl. Spec. Mstr. Jan. 11, 2022).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and

---

[3] Ms. Bridget McCullough appeared on behalf of Petitioner, and Ms. Shelly Jock appeared on behalf of Respondent. Ms. Jock was also joined by Ms. Camille Webster. The transcript of the hearing in this case was not filed as of the date of this Decision, but my oral ruling is incorporated by reference herein.

suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[4]

## B. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Ms. Mavin's awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on November 22, 2024. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

The record establishes that Petitioner suffered a moderate to severe SIRVA injury. Petitioner first sought treatment for her shoulder three days after vaccination, on October 15, 2018, when she saw Dr. Uchechuku Onuoha at LVH Allentown Healthworks with a complaint of pain in her right shoulder. Ex. 2. She reported pain levels at 5/10. *Id.* Petitioner elected to proceed with a conservative course of treatment, including ibuprofen, ice/warm compressed, and shoulder stretching. *Id.* Petitioner had another visit on October 30, 2018, with Dr. Nicholas Slenker, an orthopedic surgeon, again complaining of right shoulder pain after her flu vaccination. Ex. 3 at 66-68. She had positive signs of impingement and again elected for a conservative treatment course. *Id.*

Petitioner saw Dr. Slenker again on November 13, 2018, complaining of continued right shoulder pain. Dr. Slenker ordered an MRI, which Petitioner underwent on November 16, 2018. Ex. 3 at 256-58. Upon review, the diagnosis was that Petitioner's bursitis was related to SIRVA and she was referred to PT. *Id.* at 58-62. Her initial evaluating at PT showed decreased strength and range of motion. Ex. 3 at 246-48. Petitioner participated in four PT sessions between November 28 and December 18, 2018, during which she reported only slight pain rated at 1/10/ Ex. 3 at 234-248. Petitioner returned to Dr. Slenker on December 18, 2018, nothing that PT had somewhat improved her shoulder, but she saw Dr. Slenker again on March 1, 2019, reporting that her shoulder pain remained the same, and she was recommended for surgery. Ex. 3 at 50-53.

Petitioner saw Dr. Ross Noble on Mach 14, 2019, to receive a second opinion on

---

[4] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

her shoulder. Dr. Noble diagnosed her with right shoulder bursitis, possibly secondary to SIRVA. Ex. 5. Petitioner returned to Dr. Slenker on April 30, 2019, still complaining of shoulder pain, and Dr. Slenker again referred Petitioner for surgery. Ex. 3, at 45-49.

Petitioner thereafter underwent arthroscopic surgery on her right shoulder on May 16, 2019, after which she was diagnosed with right shoulder cuff repair and right shoulder impingement. Ex 3 at 271-73. Petitioner engaged in PT and saw Dr. Slenker periodically as she recovered from her shoulder surgery. On July 23, 2019, Petitioner complained to Dr. Slenker of limited range of motion, and was diagnosed with adhesive capsulitis and advised to treat with heat, stretching, and massage. Ex. 3, at 34-37.

At various points at PT sessions, Petitioner thereafter reported pain ranging from 1/10 at best and 7/10 at worst. Ex. 3 at 185-93. Petitioner returned to Dr. Slenker on August 16, 2019, complaining of ongoing shoulder pain and tightness. Ex. 3 at 30-33. She was referred for another MRI, which showed inflammation of the capsule/ *Id.* Petitioner was advised to continue with home exercise. Petitioner saw Dr. Russell Huffman for evaluation of post-surgical adhesive capsulitis on October 10, 2019 – she demonstrated pain and limited range of motion, and Dr. Huffman discussed treatment options with her. Ex. 6. Petitioner again saw Dr. Slenker on October 15, 2019, when she reported that she restarted PT but it did not seem to be helpful. Ex. 3, at 17-21. Dr. Slenker opined that a second surgery for capsular release would help Petitioner. *Id.*

On November 14, 2019, Dr. Slenker performed a right shoulder arthroscopy with a pan capsular release. Ex. 3 at 329-31. Her diagnosis after the procedure was right shoulder adhesive capsulitis post prior rotator cuff repair. *Id.* Post-operation, Dr. Slenker recommended Petitioner for PT. Petitioner attended many PT sessions between her second shoulder operation and February 17, 2020, when she attended her final PT session. Ex. 3 at 88-89. At the end of her PT, Petitioner rated her pain at 2/10. *Id.* at 89.

Based upon all of the above, Petitioner has demonstrated grounds for a substantial award for pain and suffering - higher than what has been recommended by Respondent. Petitioner ultimately has required two shoulder surgeries, 56 PT sessions, and two MRIs. However, Petitioner's request remains slightly excessive.[5]

Petitioner has cited to a plethora of cases which all provide good comparable points to the instant case, including *Schoonover v. Sec'y of Health & Hum. Servs.*, No.

---

[5] Prior pain and suffering determinations are not binding on this decision. *See Nance v. Sec'y of Health & Human Servs.*, No. 06–730V, 2010 WL 3291896 at *8 (Fed. Cl. Spec. Mstr. July 30, 2010); *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998) ("Special masters are neither bound by their own decisions nor by cases from the Court of Federal Claims, except, of course, in the same case on remand."). These cases, however, provide persuasive guidance herein.

16-1324V, 2020 WL 5351341 (Fed. Cl. Spec. Mstr. Augt. 5, 2020) (awarding $200,000.00 in actual pain and suffering and $39,600.00 for future pain and suffering); *M.W. v. Sec'y of Health & Hum. Servs.*, No. 18-267V, 2021 WL 3618177 (Fed. Cl. Spec. Mstr. Mar. 17, 2021) (awarding $195,000.00 in pain and suffering); *Pruitt v. Sec'y of Health & Hum. Servs.*, No. 17-757V, 2021 WL 5292022 (Fed. Cl. Spec. Mstr. Oct. 29, 2021) (awarding $185,000.00 in pain and suffering); and *Meirndorf v. Sec'y of Health & Hum. Servs.*, No. 19-1876V, 2022 WL 1055475 (Fed. Cl. Spec. Mstr. Mar. 7, 2022) (awarding $200,000.00 in pain and suffering). These cases establish a reasonable range for an award of damages in the instant case. Notably, the treatment undergone by Petitioner was comparable to what the petitioners in the cited cases underwent – all had two shoulder surgeries; Ms. Mavin had 2 MRI's while the other petitioners had between one and three MRIs; Ms. Mavin underwent 56 sessions of PT, while the other petitioner's underwent between 14 and 79 PT sessions.

However, what sets Ms. Mavin's case apart from the others is her shorter overall treatment course. In the instant case, Ms. Mavin underwent approximately 1.5 years of documented medical treatment. By contrast, the petitioner in *Schoonover* suffered at least moderate pain for two years; the petitioner in *Meirndorf* suffered pain for over three years, as did the petitioner in *M.W.*; and the petitioner in *Pruitt* suffered over four years of documented medical treatment. As I noted at the Motions Day hearing, the fact that Petitioner underwent two surgeries places her in the upper range between $100,000.00 - $200,000.00, although the records indicate that Petitioner did not likely suffer a permanent shoulder injury, such as in *Schoonover,* and therefore a reasonable award is less than $200,000.00. Given that I have found Ms. Mavin's case is slightly less severe than the one in *Pruitt*, a slightly reduced award is appropriate.

Respondent has only offered one case as a comparable, *Rodgers v. Sec'y of Health & Hum. Servs.*, No. 18-559V, 2021 WL 6773160 (Fed. Cl. Spec. Mstr. Dec. 29, 2021) (awarding $117,500.00 in pain and suffering). However, this case provides little guidance to the instant situation. The *Rodgers* petitioner suffered a SIRVA in both shoulders but did not require surgery in either shoulder, did not participate in any PT, and ultimately recovered from the injuries in less time than Ms. Mavin. Ultimately, while I agree with Respondent that Petitioner's injury was *slightly* less severe than those suffered by the petitioners in Ms. Mavin's comparable cases, the overall nature of the injury and the course of treatment is far more similar than that of the petitioner in *Rodgers.*

Overall, I find that an award slightly lower than what the *Pruitt* petitioner was awarded to be merited in the instant case. Therefore, Petitioner is awarded $175,000.00 for actual pain and suffering.

**Conclusion**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $175,000.00, representing reimbursement for actual pain and suffering.** This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[6]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.